IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**REGINALD ALEXANDER ROLLINS**                                                    **PLAINTIFF**

**VERSUS**                                                  **CIVIL ACTION NO. 1:08cv190-RHW**

**JAROME BARNES and KEN BROADUS**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is [40] a motion for summary judgment filed April 7, 2009, by Defendants Jarome Barnes and Ken Broadus. Plaintiff's response to the motion was due by April 24, 2009,[1] but Plaintiff has neither responded, nor requested any extension of time to respond to the motion; the docket reflects no activity in the case since the filing of the motion for summary judgment. Despite Plaintiff's lack of a response, because this is a dispositive motion, the Court must address it on the merits.[2]

### Procedural History

Reginald Alexander Rollins filed this 42 U.S.C. § 1983 prisoner's civil rights lawsuit May 12, 2008, claiming violation of his constitutional rights by virtue of conditions of confinement at the Jackson County Adult Detention Center (JCADC), and by denial of proper medical care during his incarceration in that facility. Rollins was incarcerated at the JCADC pending trial on an armed robbery charge, for which he was arrested January 9, 2008, and

---

[1] Rule 7.2(C) and (D), *Uniform Local Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective November 1, 2004), [now Rule 7(b)(3) and (4), *Local Uniform Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective December 1, 2009)].

[2] Rule 7.2(C)(2), *Uniform Local Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective November 1, 2004), [now Rule 7 (b)(3)(E) ], *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective December 1, 2009).

1

indicted June 6, 2008.[3] The Court conducted an omnibus/screening hearing of the case on August 13, 2008. All parties consented to jurisdiction by the U.S. Magistrate Judge [25] pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, and the case was reassigned to the undersigned for all purposes by order [27] entered November 3, 2008.

## Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). On a motion for summary judgment, the Court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Rule 56(e) provides in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading, rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. <u>If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.</u>

*Fed. R. Civ. P.* 56 (e) (emphasis added). The Court may grant a motion for summary judgment which is accompanied by competent supporting evidence if the opposing party fails to present controverting evidence. *Fed. R. Civ. P. 56 (e)*. Summary judgment is appropriate "if the

---

[3]Plaintiff was subsequently indicted on August 6, 2008 on additional charges of aggravated assault and possession of a weapon by a convicted felon. [40-3, p. 1]

2

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S. Ct. 462, 121 L. Ed. 2d 371 (1992).

The moving party must show the absence of a genuine issue of material fact by affidavit or other evidentiary materials. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 n.2, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). For the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could find for the nonmoving party, *i.e.*, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for him. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S. Ct. at 2510-11 (1986).

If the movant establishes the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex*, 477 U. S. at 325, 106 S. Ct. at 2553-54. The nonmovant cannot discharge this burden by simply referring to allegations or denials in his pleadings, but must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. See *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); Fed. R.Civ. P. 56(e). If the nonmovant fails to present evidence showing a genuine issue of material

3

facts exists, "the summary judgment motion must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The Court will address Rollins' claims in light of this standard.

<u>Conditions of Confinement</u>

The Constitution does not require that prisoners be provided a comfortable jail. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). The constitutional prohibition against cruel and unusual punishment requires simply that prisoners be afforded humane conditions of confinement, receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). To establish a constitutional violation due to conditions of confinement, an inmate must show (1) that prison officials deprived him of "the minimal civilized measure of life's necessities;" and (2) that the prison officials acted out of indifference to the inmate's health or safety. *Id*. To establish indifference, the inmate must show prison officials were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn, and that the officials actually drew an inference that such potential for harm existed. In deciding the constitutionality of conditions of confinement of pretrial detainees, the Court must determine whether the conditions complained of are imposed for the purpose of punishment. *Bell v. Wolfish*, 441 U.S. 529, 538-539 (1979).

In his pleadings and testimony at the omnibus hearing, Rollins asserted constitutional violations based upon various conditions of confinement, *e.g.*, overcrowding, unsanitary conditions, classification/failure to separate offenders, use of dogs to search for contraband during shakedowns, taking his magazines, retaliation, lack of a law library, and lack of mental health therapists at the jail. He also alleged he received improper medical care at the facility.

Rollins complains jail conditions are unsanitary. In accordance with jail policy, the

4

JCADC has clean-up three times a week in the cell blocks. Officers spray bleach and sprinkle cleanser and trustees assist in clean-up. Each cell block is provided a mop, bucket, broom, dust pan, toilet brush, shower brush and garbage bag for the inmates to use. [40-3, pp. 10-11] Rollins concedes that jail officials provide inmates cleaning supplies, but complains they do not give them enough bleach to use. He also complains about the presence of mold, which has been painted over. He admits the zones were pressure washed and painted, and when asked whether mold has caused him any problems, Rollins replied, "Just knowing it's there." [40-2, p. 20-21] The ameliorative measures of pressure washing and painting negate any intent to punish on the part of jail officials with respect to these conditions. This, coupled with Rollins' lack of evidence of injury, defeats these claims.

Rollins claims 38 inmates were housed in a zone designed for ten, and as a result, inmates had to sleep on the floors and sometimes had to wait to use the toilet. He claims this led to altercations between inmates, and that he had been in pushing and shoving incidents some ten times, although he neither reported such incidents, nor sought medical attention for any injury incurred in those events.[4] [40-2, p. 33-34] The evidence before the Court shows Rollins was housed in zone L-E, a five-cell, ten-bed zone for 54 days (April 14-June 6, 2008). During that time, according to the affidavit of Ken Broadus, Director of the JCADC, there were never 38 inmates assigned to that zone. On one day there were 32 inmates, and two other days there were 31 inmates, but the remainder of the time the average population of the zone was approximately 25. Inmates in the zone were assigned areas in which to sleep, including the cells and the day

---

[4]Defendants urge that Rollins' failure to report such incidents should bar him from presenting them here as he has failed to exhaust administrative remedies. 42 U.S.C. § 1997(e)(a) ("no action shall be brought with respect to prison conditions under Section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.")

5

room. Although Rollins has not always had a bed, he concedes he did have a mat, blanket and pillow, and that as of July 2008, he has had a bed. By the time of the omnibus hearing, Rollins had been assigned to the medical zone, where he had unrestricted use of the restroom. Overcrowding of inmates is not *per se* unconstitutional, *Rhodes v. Chapman*, 451 U.S. 337, 347-350, 101 S.Ct. 2392 (1981), nor does the temporary inconvenience or discomfort of having to sleep on a mat on the floor amount to a constitutional violation. Pretrial detainees have no right to an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85-86 (5th Cir. 1986). The Court finds no merit in this claim.

Rollins' classification complaint is that enemies[5] were housed together, which also led to altercations amongst inmates, and that healthy inmates were housed with sick or mental inmates. Specifically, Rollins claims inmate Demetrius Williams was assigned to the same zone with Rollins, and that Rollins is charged with having shot Williams.[6] The Broadus affidavit establishes that inmates brought into the JCADC are interviewed by a booking officer, who provides the information gleaned to classification. Per jail protocol, before an inmate is assigned to a cell block by classification, he is brought into the cell block accompanied by an officer, and is asked if he has any problem with the other inmates. If he does, he is moved elsewhere; if he does not, he is assigned to that cell block. When inmates are known to be a danger to other inmates, their names are placed on a list for officers to know to keep them separated.

According to the Broadus affidavit, Rollins filed no grievances concerning mixing of inmates, fights, or housing sick/mental inmates with healthy ones, and there were no reports of

---

[5]Members of different gangs and non-gang members.

[6]After Rollins was incarcerated in January 2008 on the armed robbery charge, he was indicted on August 6, 2008 for an aggravated assault involving the shooting of Williams. [40-3, p.1]

6

any fights between Rollins and inmate Williams. [40-3, pp. 2-4] The affidavit of classification officer Cindy Stewart establishes that Rollins and Williams were assigned to the same zone only from May 28, 2008 - June 6, 2008, and when Rollins advised classification that he was charged with shooting Williams, Rollins was moved to another zone. [40-3, p. 5] Stewart's affidavit also corroborates the Broadus affidavit that there were no reported incidents between Rollins and Williams during the brief time they were housed in the same zone. [40-3, p. 5] Although Rollins testified that "gang members" have attacked him once or twice and hit him in the mouth and head, and that he has a couple of teeth loose, he did not state that he ever reported any such events, and he testified he never sought medical treatment for any injury sustained in any altercation with other inmates, he treated himself with creams and salves. [40-2, pp. 14-15, 34]

There is no constitutional right to receive a certain classification while incarcerated. *Meacham v. Fano,* 427 U.S. 215 (1976). Inmates have neither a constitutionally protected property nor liberty interest in custodial classification *Mikeska v. Collins*, 900 F.2d 833, 836 (5th Cir. 1990), *citing Moody v. Baker*, 857 F.2d 256 (5th Cir. 1988), *cert. denied*, 488 U.S. 985, 109 S.Ct. 540, 102 L.Ed.2d 570 (1988); *Harper v. Showers*, 174 F.3d at 719, *citing*, *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998). Rollins' claims regarding classification fail for lack of a constitutionally protected interest and for lack of evidence of injury.

Because he was bitten by a dog when he was a youngster, Rollins complains he is "traumatized" by the jail's practice of using of dogs in shakedowns and extractions. He admits the dogs are not allowed to attack inmates, but they scare him. [40-2, p. 32]. He also complains of the use of flash grenades, which, as best the Court can tell, Rollins first mentioned in document [34] filed December 31, 2008, in which he moved to dismiss all his claims other than

7

those specifically listed. Item 4 on the list is, "flash grenades and attack dogs." Rollins has pled no facts and presented no other information regarding these claims. There is no evidence before this Court to show that Rollins has suffered any constitutional deprivation or resulting injury with respect to dogs and flash grenades. The use of dogs to assist in controlling the situation during shakedowns and searches for contraband appears to be reasonably related to legitimate governmental objectives in maintaining the security of the facility. In light of the absence of facts and Plaintiff's lack of proof that he sustained any injury from these conditions, the Court finds insufficient foundation for Rollins' claimed violation of constitutional rights. See, *Bell v. Wolfish*, 441 U.S. at 539. Rollins cannot maintain a cause of action for mental or emotional damages under § 1983 in the absence of physical injury. *Herman v. Holiday*, 238 F.3d at 665; *Harper v. Showers*, 174 F.3d at 719; 42 U.S.C. § 1997e(e).

Rollins' claim that his magazines were taken from him was not mentioned in the complaint or at the omnibus hearing; it was first mentioned in a motion to amend filed August 25, 2008. The documentary evidence before the Court demonstrates the lack of foundation for a constitutional claim based on these allegations. The documentary evidence includes a June 19, 2008 grievance form in which Rollins complains that his "monthly subscriptions of magazines haven't been getting back here to me." [40-3, p. 6] Broadus responded to this grievance the day after it was filed, asking Rollins to specify the magazines he was talking about so that Broadus could check with the publishers to see if Rollins had paid for them. [40-3, p. 7] Rollins filed another grievance on June 26, 2008, stating he had not received the magazines KING, Jet and Essence for the last few months. [40-3, p. 8] Broadus responded to this grievance the next day, advising that the magazines were ordered, but not paid for, and

8

that if Rollins showed proof of purchase, Broadus would further investigate the matter. [40-3, p. 9] Rollins' speculation regarding the magazines is not evidence, and the facts alleged fail to demonstrate any intent to punish, and are insufficient to state a constitutional claim. See, *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004).

Rollins complains about the lack of a law library at the JCADC, an access to courts claim. Rollins stated he wanted access to a law library to find out some things about his cases. He admitted he is represented by counsel on his criminal charges. When asked directly if his inability to use the law library had damaged his case in any way, Rollins gave this unresponsive reply, "I would like to find out some few things since I can't get access to my public defender, due to overcrowding." [40-2, p. 22] Because Rollins has presented nothing to show that his lack of access to a law library has in any way prejudiced his position as a litigant or prevented him from filing some legal claim, he cannot prevail on this issue. *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998).

The Court considers Plaintiff's claim of "vindictiveness of staff " [34] to be a claim of retaliation. With respect to this claim, Rollins was required to establish (a) a specific constitutional right; (2) Defendants' intention to retaliate against him for his exercise of the right; (3) a retaliatory adverse act; and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006), *cert. denied*, 549 U.S. 1038(2006). The gist of Plaintiff's complaint is that he was ridiculed and called names. Specifically, he claims Defendant Barnes cursed him, told him to shut-up and called him a "gang-banging pissant," and that while dispensing medications one day, Barnes said to Rollins, "Thank Mr. Lawsuit here. Nobody is getting anything." Rollins does not state that he sustained any actual injury resulting from these remarks, just that he had anxiety and

9

paranoia. As the Court stated in *Bender v. Brumley*, 1 F.3d 271, 274, n. 4 (5th Cir. 1993):

> Mere allegations of verbal abuse do not present actionable claims under § 1983. "[A]s a rule, 'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.' " *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983) (quoting *Coyle v. Hughs,* 436 F.Supp. 591, 593 (W.D.Okla.1977)).

The Court finds Rollins has failed to establish the essential elements of a retaliation claim.

<u>Deliberate Indifference to Serious Medical Needs</u>

To establish a constitutional violation due to deliberate indifference to serious medical needs, Rollins bore the burden of proving: (1) the defendants displayed indifference to his illness; (2) his illness was serious; and (3) he was injured as a result of the jail officials' acts or omissions regarding his illness; that is, the Defendants unnecessarily and wantonly inflicted harm on him.[7] To act "deliberately" means to act intentionally; that is, knowingly and voluntarily and not because of mistake or accident. Rollins ' [34] final amendment listed his medical claim as "Doctor/nurses negligence." The negligent rendering of medical care is insufficient to establish the required willful or deliberate indifference to a serious medical need. Even if Rollins' medical care were to be deemed inadequate, that would not suffice to establish a constitutional claim.

> [n]ot all inadequate medical care rises to the level of an Eighth Amendment violation; "[it] is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." A plaintiff must prove "objectively that he was exposed to a substantial risk of serious harm: and that "jail officials acted or failed to act with indifference to that risk" which requires actual knowledge and disregard.

(Footnotes omitted). *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004).

Rollins contends he is mentally disturbed and should have been housed at the state mental

---

[7] *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

hospital instead of at the jail. He thinks he has tuberculosis because it took some time for a knot to go away at the site of his TB test, but he concedes no one has ever diagnosed him as having TB, and he admits he does not know if he has it. [40-2, pp. 15-16] There is no evidence before the Court to support these claims. Rollins also asserts the doctors and nurses were negligent in: (a) mixing of medicine; (b) failure to treat in a timely manner; (c) not being able to see doctor; (d) Nurse Barnes' raising his hand as if he were the pope and saying, "Your back and leg are healed, now get away from my cart!;" (e) not acknowledging sick call slips; (f) forcing him to take wrong medicine; and (g) only treating him because his sister told him don't worry about a lawsuit if he "took care of me." [34] Rollins alleges that he was taking Prozac and Seroquel when he came to the jail, but his medication was changed to Wellbutrin, to which he claims to be allergic. He also alleges that jail officials or medical personnel declined to take him to his own doctor for a regular check-up,[8] or to refer him to a doctor for a bulging disk, and that the JCADC has no therapist for inmates with mental health problems. He says he needs to see an optometrist for new eyeglasses. [40-2, pp. 22-27, 33]

Rollins admits that during his incarceration he has seen the nurse daily. [40-2, p. 25] His records show that he was promptly interviewed by Nurse Barnes the day he entered JCADC, and despite Rollins giving erroneous information, Barnes was able to secure Plaintiff's medical records from Springfield Hospital Center in Maryland, which show that Rollins was prescribed Wellbutrin upon discharge from that facility. The same day these records were received, Rollins was prescribed and began receiving Wellbutrin at the JCADC. [43, pp. 4-26] Although Rollins contends he is allergic to Wellbutrin, he has presented no evidence other than his saying this is

---

[8]Plaintiff wanted to go to Dr. McNair, who is identified in the records as his uncle. [43-2, p. 4]

so, and the records contain no indication that he has ever exhibited any allergic symptoms to Wellbutrin. Rollins claims jail personnel force him to take the wrong medications, but the records show that he has been advised he can refuse medication, and he has, in fact refused to take medications prescribed for him not only at the jail, but also at Springfield Hospital Center in Maryland [43, pp. 13-14, 43], and Singing River Mental Health. [43, p.5] Rollins told Nurse Jackson he just throws the medication away. [43, pp. 2-3] Finally, Rollins complains that there are no therapists at the JCADC, which Defendants concede is true. However, the records show that Rollins is taken to Singing River Mental Health for therapy.

The evidence before the Court fails to demonstrate deliberate indifference by jail officials to any serious medical condition of Rollins, and mere negligence, neglect or even medical malpractice do not constitute a valid § 1983 claim. See, *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1991). The records indicate Rollins has been provided reasonable care during his incarceration, was given medications for his various complaints, and was being monitored by a physician as well as the nurses at the jail. That he may disagree with the treatment or medication he receives does not equate to a violation of his constitutional rights. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Prison officials are not liable for denial of medical treatment unless they know of and disregard an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Rollins has failed to come forward with any evidence of such deliberate indifference on the part of the Defendants in this case.

To the extent that Rollins claims official capacity liability on the part of Broadus and Barnes, the Court notes that such a claim would actually be one against Jackson County, Mississippi, the entity of which they are agents, rather than the individuals. Since Rollins has

presented no evidence of the essential elements of such a claim, *i.e.*, a policy of the County's policymakers which violated Rollins' constitutional rights, this claim also fails. See, *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 56 L.Ed.2d 611, 635, fn 55, 98 s.Ct. 2018 1978.

Pursuant to applicable law, and from the evidence of record, the Court finds summary judgment appropriate as to all Rollins' claims. It is therefore,

**ORDERED AND ADJUDGED**, that Defendants' motion for summary judgment is granted. A separate judgment shall be entered in favor of both Defendants.

SO ORDERED, this the 26th day of January, 2010.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE